IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MERCANTILE PLACE #1 LIMITED PARTNERSHIP | * | |
| | * | |
| Plaintiff, | | |
| | * | Civil Action No. PX 17-1266 |
| v. | | |
| | * | |
| RENAL TREATMENT CENTERS- MID ATLANTIC, INC. | * | |
| | | |
| Defendant. | | |

\*\*\*\*\*\*

## **MEMORANDUM OPINION**

Pending before the Court are cross-motions for summary judgment filed by Mercantile Place #1 Limited Partnership ("Plaintiff") and Renal Treatment Centers – Mid Atlantic, Inc. ("Defendant"). ECF Nos. 4 & 24. Plaintiff initially filed its Complaint on March 10, 2017 with the Circuit Court for Prince George's County. On April 10, 2017, Plaintiff moved for summary judgment, ECF No. 4, and on May 8, 2017, Defendant removed the case to this Court, and later entered a cross-motion for partial summary judgment. ECF No. 24. On July 3, 2017, Plaintiff moved to extend the time by which it could seek leave to amend the Complaint until after the resolution of the dispositive motions, ECF No. 27. Defendant also requested, and the Court granted, that discovery be stayed pending resolution of the cross-motions for summary judgment. ECF No. 38. The issues are now fully briefed and a hearing was held on November 3, 2017. For the reasons stated below, Defendant's Motion for Partial Summary Judgment on Damages, ECF No. 24, is GRANTED and Plaintiff's Motion for Summary Judgment, ECF No. 4, is DENIED. Plaintiff's Motion for Extension of Time to Request Leave to Amend Complaint, ECF No. 27, is GRANTED.

## I. BACKGROUND

The following facts are undisputed. Plaintiff Mercantile Place #1 Limited Partnership ("Plaintiff" or "Lessor") is a Maryland Limited Partnership that manages and leases real property throughout the state of Maryland, including 1300 Mercantile Lane, Largo, Maryland 20774 ("Property"). ECF No. 2. Defendant Renal Treatment Centers ("Defendant" or "Lessee") is a renal treatment facility incorporated in Delaware and licensed to do business in Maryland. *Id*. On November 22, 2000, Plaintiff and another dialysis treatment facility entered into a Lease ("Original Lease"). ECF No. 21-2. Defendant replaced the original treatment facility as tenants of the Property in 2004. The parties executed an amendment to the Original Lease dated December 21, 2004 ("2004 Amendment"). ECF No. 28-1. The parties then executed a new Lease Agreement on November 20, 2009 ("2009 Lease"). ECF No. 24-1. The parties agree that the 2009 Lease is the operative agreement for purposes of resolving the pending motions. *Id.*; *see also* ECF Nos. 2 & 19.

Under the 2009 Lease, utilities are considered "rent" payable to Plaintiff Lessor and are separately metered by Defendant Lessee. *See* 2009 Lease, ECF No. 24-1 at ¶¶ 3, 4, 20. To determine the Defendant's monthly water and sewer usage, Plaintiff formally requests that an agent from Defendant's property management company, Knollwood Development, enter the leased premises and read the Lessee's water meter ("sub-meter"). Based on these sub-meter readings, Plaintiff determines the amount of "rent" charges against individual Lessees. ECF No. 26 ¶ 10; *see also* Complaint, ECF No. 2 at ¶ 6; Cohen Affidavit, ECF No. 21-1 at ¶¶ 43–48. Failure to pay water and sewer expenses is a material breach of the Lease. *See* 2009 Lease, ECF No. 24-1; *see also* Complaint, ECF No. 2.

In 2004, Defendant initiated a significant construction project to remodel the Property. ECF Nos. 21 & 21-4. In the construction plans, Defendant represented that new plumbing would

2

include a new sub-meter, water meter bypass valve, and meter shut-off valves. ECF Nos. 21-4 & 26-5. Plaintiff was provided with all project and design plans and, pursuant to the terms of the 2004 Lease Amendment, possessed the right to oversee construction and receive compensation for any time spent reviewing the Lessee's changes to the Property. *See* 2004 Amendment, ECF No. 28-1 at ¶ 8 ("Lessee acknowledges that Lessor has incurred, and will continue to incur, costs related to its review of the plans for the improvement of the Space and ultimately, monitoring the installation of said improvements . . . Lessee [will compensate] for the costs of associates of Lessor reviewing plans and monitoring progress of the construction of improvements over time.").

In June 2005, Defendant installed a new water sub-meter at the Property. ECF No. 21 at ¶ 17. Thereafter, from July 26, 2005 to September 2016, Plaintiff was given monthly access to the Defendant's Property to record the sub-meter reading without incident. Each month, Defendant paid Plaintiff for the amount of water as reflected in the sub-meter reading. *See* ECF No. 21 at ¶ 17.

On September 26, 2016, one of Plaintiff's partners, Seth Cohen ("Mr. Cohen") had occasion to inspect the Property with plumber Mike Mallick. Cohen Affidavit, ECF No. 21-1 at ¶ 22. During the inspection, Mr. Cohen and Mr. Mallick observed that the plumbing did not include water meter shut-off valves. The gentlemen also discovered that the water meter bypass valve was open to Defendant's water supply, allowing water to be used by Defendant that was unmetered and thus unrecorded. ECF Nos. 19-2 & 21.

Defendant immediately informed Plaintiff that the meter bypass valve was open and that once the valve was closed, Plaintiff would "closely monitor the meter." ECF No. 19-2. Plaintiff proceeded to take daily readings of the sub-meter for the first week, followed by weekly readings

3

until the next regularly scheduled monthly reading. ECF No. 19-2. The purpose of these readings was to ascertain Defendant's average monthly water usage when properly metered and compare this data to Defendant's historic monthly usage. *Id*. Plaintiff would use these readings to perform an analysis "over the next couple of months" to approximate the Defendant's correct monthly usage, determine when the bypass valve was first opened, and "initiate revised billing so that the unmetered water can be paid for." *Id.* Upon receipt of Plaintiff's email, Defendant immediately closed the bypass valve. ECF No. 19.

From September 27, 2016 until October 27, 2016, Plaintiff recorded sub-meter readings averaging 8,817 gallons per day. Complaint, ECF No. 2 at ¶ 32. Previous monthly readings from the installation of the new sub-meter in July 2005 to Plaintiff's discovery of the open valve in 2016 averaged around 4,089 gallons per day. *Id.* at ¶ 12. Based upon this data, the Plaintiff invoiced the Defendant on October 28, 2016, for unpaid water totaling $326,754.28 and citing Paragraph 5 of the 2009 Lease which states:

> Lessee does hereby covenant and agree to take and to hold, and does hereby take and hold, the Premises for the said term at the said rental, payable as aforesaid and under the conditions, covenants and agreements contained therein, and *agrees to pay all bills for electricity, water and sewer service chargeable against the Premises as same shall become due and payable.*

2009 Lease, ECF No. 24-1 at ¶ 5. Plaintiff created the October 28, 2016 billing statement by applying the newly recorded daily average of 8,817 gallons per day to the prior eleven years and adjusting each monthly water bill for historical water and sewer costs that had not already been paid. ECF No. 21; *see also* ECF Nos. 4-2, 4-3, & 4-4. Defendant refused to pay this invoice, pleading ignorance of the open water bypass valve, pointing to Plaintiff's "failure to mitigate damages," challenging Plaintiff's methodology to calculate the unpaid rent, and asserting that the statute of limitations has run on a lion's share of Plaintiff's claimed damages. ECF No. 19. At

4

an impasse, Plaintiff filed suit, alleging breach of contract and seeking $326,754.28 in damages, plus interest of at least $16,337.72. *See* Complaint, ECF No. 2 at ¶¶ 16–18; *see also* 2009 Lease, ECF No. 24-1. The viability of this claim thus gives rise to the pending motions.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The party moving for summary judgment bears the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the non-moving party, summary judgment must be denied. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The facts, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The opposing party cannot rest on the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, point to facts that give rise to a genuine dispute that is material to the claims. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 252. When a court is called upon to decide cross-motions for summary judgment, it must review each motion separately on its own merits to decide whether either party deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

**III. ANALYSIS**

    **A. Choice of Law**

Because this Court exercises diversity jurisdiction over this case, it applies Maryland's choice of law rules. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."). In Maryland, it is "generally accepted that the parties to a contract may agree as to the law which will govern their transaction." *Kronovet v. Lipchin*, 288 Md. 30, 43 (1994). The parties' choice of law is to be honored unless, "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the forum state precludes the application of the choice of law provision." *American Motorists Ins. Co. v. ARTA Group, Inc.*, 338 Md. 560, 572 (1995).

Here, the parties' 2009 Lease and the 2004 Amendment both specifically state that Maryland law will apply to any disputes arising from the contract. 2009 Lease, ECF No. 24-1 at ¶ 20; 2004 Amendment, ECF No. 28-1 at ¶ 17. Because the parties agree that the 2009 Lease governs the parties' dispute, and do not argue that its choice of law provision is unenforceable, the Court will apply substantive Maryland law. *See* 2009 Lease, ECF No. 24-1; *see also* ECF Nos. 4 at ¶ 1 & 19 at 2.

    **B. Defendant's Partial Motion for Summary Judgment**

Defendant principally argues that Plaintiff's claims are limited to the three years prior to filing suit. First, Defendant asserts that § 5-101 of the Courts and Judicial Proceedings (CJP) Article of the Maryland Code requires that a three year statute of limitations apply to this breach of contract action, not the twelve year rule of CJP § 5-102(a)(5) claimed by Plaintiff. ECF No. 24 at 3–6. Defendant also argues that under continuing harm doctrine, Plaintiff's recovery is

6

limited to the three years that precede the filing of suit, ECF No. 24 at 7–8, whereas Plaintiff argues that the entirety of their claim, including over a decade of alleged damages, was accrued by the discovery rule. ECF No. 26 at 8–14. The Court addresses each argument in turn.

1. **Applicable Limitations Period on Contract Claim**

In Maryland, actions arising from breach of a lease agreement are customarily subject to a three-year statute of limitations under CJP § 5-101. *See Tipton v. Partner's Mgmt Co.*, 364 Md. 419, 445–46 (2001). Plaintiff, however, contends that CJP § 5-102(a)(5) more appropriately applies, extending the limitations period to twelve years. Complaint, ECF No. 2. Section 5-102(a)(5), entitled "Action on specialties," provides that "an action on one of the following specialties," to include "a Contract under seal" shall be filed "within 12 years after the cause of action accrues."

Plaintiff points to two places in the 2009 Lease which refer to it being "under seal." Mere reference to a document as being under seal, however, is not sufficient to pull an agreement within § 5-102(a)(5)'s reach. *Ely v. Science Applications Int'l Corp.*, 716 F. Supp. 2d 403, 404–06 (D. Md. 2010) (applying the three year statute of limitations to a commercial lease in which the word "SEAL" appeared twice). Rather, the evidence must demonstrate that the parties clearly intended to create a specialty contract, and more particularly that "either party intended that [the contract] be sealed so as to waive the three-year period of statutory limitation" that would otherwise apply. *Id.* at 406. Absent such evidence, the Court must apply the three-year limitations period to residential or commercial leases executed "under seal." *See Tipton*, 364 Md. at 436–39 (discussing the legislative history of the predecessor to § 5-101, which was incorporated by reference, stating that "*all* actions, whether of debt, ejectment or of any other description whatsoever, *brought to recover rent in arrear, reserved under any form of lease . . .*

7

all distraints issued to recover such rent shall be commenced, sued or issued within three years from the time the cause of action accrued."). Because no record evidence reflects a clear intent to waive the three year limitations period in favor of the twelve year limitations period, the Court applies a three year statute of limitations to Plaintiff's contract claim.

**2. Accrual of Claim**

Having decided that a three year limitations period applies, the Court must next determine when the Plaintiff's claim accrued. In Maryland, determination of claim accrual is ordinarily "left to judicial determination," *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000), and "may be based solely on law, solely on fact, or on combination of law and fact." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334 (1994).

Plaintiff argues that its claims are not limited to the three years preceding suit because it could not have known that the water meter bypass valve was left open and thus the discovery rule will toll its claim. ECF No. 26 at 10. The discovery rule is designed to protect a plaintiff "where it was not reasonably possible to have obtained notice of the nature and cause of an injury." *Poole v. Coakley & Williams Const., Inc.,* 423 Md. 91, 132 (2011). The rule provides that the time by which accrual is measured must be tolled "until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence," *id.* at 131 (internal citations omitted); *see also Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 663 (1983).

The discovery rule, however, does not toll limitations of Plaintiff's claims here. Construing the evidence in the light most favorable to Plaintiff, it is beyond dispute that Plaintiff could monitor the installation of the Defendant's plumbing. *See* 2009 Lease, ECF No. 24-1 at ¶ 12 (stating that "Lessor shall have the right to inspect, and perform service work or

8

improvements within, through, around, or adjacent to the Premises at any time)"; *see also* 2004 Amendment, ECF No. 28-1 at ¶ 8 (negotiated amendment to the original Lease establishing that "Lessee acknowledges that Lessor has incurred, and will continue to incur, costs related to its review of the plans for the improvement of the Space and ultimately *monitoring the installment of said improvements*" and that Lessee would compensate Lessor for "costs of associates of Lessor reviewing plans and *monitoring progress of the construction of improvements over time*.") (emphasis added). It is also undisputed that when Plaintiff exercised their contractual rights and requested access to inspect Defendant's property, Plaintiff was given access. *See, e.g.*, Cohen Affidavit, ECF No. 21-1 at ¶ 19, 22. Additionally, it is undisputed that Plaintiff's agents, the property management service, took monthly readings of the water meter starting on July 26, 2005. ECF No. 26 at ¶ 9–10. This means Plaintiff or its agent accessed the water meter well over 100 times, each time giving Plaintiff fresh opportunity to notice the opened bypass valve.[1]



ECF No. 19-2. Moreover, as Plaintiff itself highlighted in its September 26, 2016 email to Defendant, which included the photograph above, the water meter bypass valve is *directly above*

---

[1] Between June 2005 and September 2016, approximately 135 monthly inspections took place.

9

the submeter. *Id.* ("As seen above, the valve directly above the meter controls the flow of incoming water "around" the meter. With the valve being open, it is allowing unmetered water to enter DaVita's plumbing system."). Plainly, therefore, a reasonable person in Plaintiff's position could have discovered their potential claims before September 2016. *Id.*; *see also* Cohen Affidavit, ECF No. 21-1 at ¶¶ 22–24, ("[I]t was observed that the water meter bypass valve was in the open position during this visual inspection.").[2]

It is also noteworthy that, according to Plaintiff, the opened water meter bypass valve resulted in a 2,000 to 4,000 gallon per day increase in unmetered water at the Property. ECF No. 21-6. Plaintiff pays the water bill for the entire building and so is specifically familiar with the total average volume of water consumed in the building. Plaintiff is further familiar with the average usage of tenants with sub-meters, as they bill each separately for their share of consumed water. *See* Cohen Affidavit, ECF No. 21-1 at ¶ 43. Plaintiff therefore had ample opportunity to note the increase in overall water consumption for which it must have paid out of pocket, *id.* at ¶ 47, and could have investigated accordingly. Because, with the exercise of due diligence, it was reasonably possible for Plaintiff to have learned about the increase in unmetered water, the discovery rule does not save Plaintiff's claims.

But all is not lost for Plaintiff. Where, as here, plaintiff alleges the defendant committed a series of acts or established an unlawful course of conduct, i.e., "continuing violations," and at least one tortious act took place within the limitations period, the "continuing harm" exception to the discovery rule applies. *See Litz v. Maryland Dept. of Environment*, 434 Md. 623, 646 (2013); *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807 (D. Md. 2015). This is so

---

[2] Plaintiff moves pursuant to Rule 56(d) of the Federal Rules of Civil Procedure for additional discovery on whether its contractual right to inspect the construction project satisfies the discovery rule, as Defendants contend. ECF No. 39. However, given the undisputed facts before the Court, Plaintiff's requested discovery would not generate any triable issue of fact regarding when Plaintiff could have discovered that the water bypass valve was open. Accordingly, the Court denies this request.

10

because "[e]very repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Chevron*, 113 F. Supp. 3d at 820 (quoting *Jones v. Speed*, 320 Md. 249, 262 n.4 (1990)). Under the continuing harm exception, limitations is tolled regardless of when the wrongdoing should have been discovered, but damages are limited to only violations that took place within the applicable limitations period. *Chevron*, 113 F. Supp. 3d at 820; *see also Shell Oil v. Parker*, 265 Md. 631, 636 (1972).

Here, the plain language of the operative Lease, as well as Plaintiff's Complaint, triggers the continuing harm exception. Plaintiff's breach of contract claim arises from alleged *monthly* underpayment of utilities in violation of the Lease. *See* Complaint, ECF No. 2 at ¶ 6–17. The 2009 Lease plainly states that "Lessee *shall pay as additional rent* the costs of such service based on the reading of the submeter by Lessor along with the actual costs incurred by Lessor related thereto." *See* 2009 Lease, ECF No. 24-1, ¶ 20 (emphasis added); *see also id.* at ¶ 3 (stating that "[a]ll additions and adjustments hereinafter provided shall be deemed as being additional rent."); *id.* at ¶ 7 (requiring that non-payment of water and sewer service will be treated as "default in the payment of any installment of rent."). Rent becomes a payable debt when the time stipulated for payment arrives, *see, e.g., Ely v. Science Applications Int'l Corp.*, 716 F. Supp. 2d 403, 408–09 (D. Md. 2010) (citing *Lochner v.* Martin, 218 Md. 519 (1959)), and the 2009 Lease requires that rent is paid "on or before the first day of each month during the Lease term," including "all additions and adjustments hereinafter . . . deemed as being additional rent." 2009 Lease, ECF No. 24-1, ¶ 3; *see also* 2000 Lease, ECF No. 21-2. Thus, every month that Defendant did not pay for water it used, it inflicted a continuing harm on Plaintiff. Accordingly, the "claimant's damages are limited to those occurring within the three year period prior to the filing of the

11

action." *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 820 (D. Md. 2015) (internal citation omitted). All claims for unpaid water usage before March 10, 2014, therefore, are time barred.

### C. Plaintiff's Motion for Summary Judgment

Because Plaintiff's claims based on conduct that occurred before March 10, 2014 are time barred, Plaintiff's motion for summary judgment is denied as to all claims which pre-date March 10, 2014.

As to the surviving claims, the parties do not dispute that the bypass valve was indeed open when Plaintiff inspected the plumbing on September 26, 2016. ECF No. 19. The parties also do not dispute that the 2009 Lease governs this case. *Id.* Further, the parties do not dispute that a portion of the water used by Defendants would have escaped the meter reading due to the open bypass valve, and thus Defendant would not have reimbursed Plaintiff for the entire amount of water that Defendant consumed on any day in which the valve was open. *Id.* at 3.

The more vexing issue, however, is Plaintiff's proof on how long the bypass valve had been open during the three year claim period, as well as the proper measure of damages. As an initial matter, it bears noting that liability and damages, to some extent, rely on the same factual predicate. For Plaintiff to demonstrate that Defendant breached the 2009 Lease, it must show that Defendant used water for which it did not pay. Accordingly, to the extent genuine issues of disputed fact exist as to the proper measure of unpaid water attributable to Defendant, summary judgment is inappropriate as to both liability and damages.

Regarding the state of the evidence on the alleged unpaid water, Plaintiff provides only summary charts of Defendant's average water consumption both before and after the bypass valve was shut. Defendant vigorously disputes the reliability of these charts, noting that they are

12

"wholly unsupported by source documents." ECF No. 19 at 4. Summary charts, standing alone, are inadmissible without determining the chart's accuracy based on the underlying data. *See* Fed. R. Evid. 1002 ("An original writing . . . is required in order to prove its content unless these rules or a federal statute provide otherwise."); Fed. R. Evid. 1006 (allowing parties to use a summary chart "to prove the content of voluminous writings" provided that the originals are available for examination); *see also Gordon v. United States*, 344 U.S. 414, 421(1953) ("The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description.").

Plaintiff has not submitted any original utility or accounting records to demonstrate the accuracy of its calculations. *See* Summary Charts, ECF Nos. 21-6 & 21-7; *see also* Cohen Affidavit, ECF No. 21-1 at ¶¶ 30, 38 (stating "Mercantile Place examined all prior water bills" and calculated damages by adjusting "each monthly water bill from June 2005 through September 27, 2016."). Plaintiff's own engineering expert further undercuts the reliability of the summary charts in opining that Plaintiff's calculations are based on too small of a data set to be statistically sound. *See* ECF No. 32-1 at 5, 10. Plaintiff's expert employs a different methodology, the calculations of which reduced average water consumption by roughly 2,000 gallons than what is reflected in Plaintiff's charts. *Id.* (noting Plaintiff's "initial assessment, although logical, was based on too small of a data set," and it was more likely that Defendant's average daily water consumption from 2005 – 2016 was around 6,669 gallons per day as compared to Plaintiff's claimed number of 8,817). Accordingly, when comparing the summary charts to Plaintiff's own expert report, genuine issues of material fact remain regarding the scope

13

of Defendant's liability and the proper measure of damages. Plaintiff's Motion must therefore be denied.

**D. Plaintiff's Motion for Extension of Time to Request Leave to Amend Complaint**

For the reasons discussed in the November 3, 2017 hearing, Plaintiff's Motion for Extension of Time to Request Leave to Amend Complaint is granted and Plaintiff may amend its Complaint on or before November 23, 2017.

**IV. CONCLUSION**

Accordingly, the Court shall GRANT Defendant's Motion for Partial Summary Judgment, ECF No. 24, DENY Plaintiff's Motion for Summary Judgment, ECF No. 4, and GRANT Plaintiff's Motion for Extension of Time, ECF No. 27. Further, Defendant's Motion for Leave to File Surreply, ECF No. 25, is DENIED as moot. A separate order will follow.


| 11/8/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |